**Marci K. ROSENBARGER, Plaintiff,**

v.

**R. Perry SHIPMAN, individually and in his official capacity as Judge of the Benton Circuit Court, Defendant.**

No. 4:93cv39 AS.

United States District Court, N.D. Indiana, Hammond Division at Lafayette.

May 6, 1994.

---

Ivan E. Bodensteiner, Valparaiso, IN, for plaintiff.

Jon Laramore, Office of Indiana Atty. Gen., Indianapolis, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### INTRODUCTION

Plaintiff Marci Rosenbarger was employed as a probation officer in Benton County, Indiana, between May 1989 and April 1992. In April 1992 she was discharged because of her marriage to a Benton County deputy sheriff. The plaintiff contends that her discharge violates her rights protected by the First and Fourteenth Amendments to the Constitution of the United States.

### JURISDICTION

Plaintiff brings her case under 42 U.S.C. § 1983. This court's federal question jurisdiction is here invoked under 28 U.S.C. §§ 1331 and 1343.

### FACTS

The defendant's memorandum ably recounts many of the undisputed facts in this case. Defendant R. Perry Shipman has been Judge of the Benton Circuit Court since January 1, 1973. He hired Marci Maris (now Rosenbarger) as the second probation officer for the Benton Circuit Court, effective May 15, 1989. Prior to that date, there had been only a single probation officer, a position held by Thomas Thurston since about 1974. When Rosenbarger was hired, Thurston became chief probation officer.

In November of 1990, after she had worked as a probation officer for approximately eighteen months and shortly after Judge Shipman's re-election, Rosenbarger approached Judge Shipman about concerns she had over Mr. Thurston's activities. These concerns were: 1) false mileage claims and use of the office telephone for personal reasons; 2) failure to work the hours for which he was being paid; 3) publication of a Rotary Club newsletter using county equipment, supplies, and personnel; and 4) working out deals with a probationer. Plaintiff's Memo at 11. Apparently Judge Shipman spoke to and admonished Thurston about these issues, but initiated no formal investigation. Defendant's Memo at 4 (*citing* Rosenbarger's Dep. *and* Shipman's Dep.). A few weeks after Rosenbarger's discussion with Judge Shipman about Thurston, Judge Shipman reappointed her as a probation officer. Indiana law states that "Probation officers shall serve at the pleasure of the appointing court," which of course makes them employees at will. I.C. 11–13–1–1(c).

In July 1991, Rosenbarger announced that she would be married to Matthew Rosenbarger, a Benton County Deputy Sheriff. Matthew Rosenbarger is one of only four full-time deputies in Benton County. As soon as she announced her engagement, Rosenbarger was informed by Judge Shipman that her employment as a probation officer would be terminated upon her marriage because her marriage to Deputy Sheriff Matthew Rosenbarger would create a conflict of interest. The judge states that he believed there would be both actual conflict and the perception of conflict, which is discussed later in this opinion.

On December 24, 1991, five months after being notified that her job would be terminated upon marriage to the Deputy Sheriff, Rosenbarger filed a complaint with the Indiana Civil Rights Commission (ICRC). She charged that the plan to terminate her when she married the Deputy Sheriff constituted sex discrimination. She also charged that her salary was below the state-set standard, which issue was in the control of and resolved by the County Council and is irrelevant here. The ICRC determined on March 2, 1993 that the evidence failed to substantiate Rosenbarger's allegation, and on review the Equal Employment Opportunity Commission (EEOC) affirmed the ICRC's finding.

On February 17, 1992, Rosenbarger filed a second complaint with the ICRC, stating that she had received two written warnings in January 1992 and a reprimand in February

1992. She charged that those disciplines were in retaliation for her previous (December 1991) complaint to the ICRC. The ICRC found that the evidence failed to substantiate that charge, and the EEOC affirmed that finding as well.

Ms. Rosenbarger's employment was terminated April 24, 1992, the day before her marriage to Deputy Sheriff Matthew Rosenbarger.

On June 14, 1993, Ms. Rosenbarger filed suit in this court under 42 U.S.C. § 1983, alleging that she was terminated for unconstitutional reasons. The plaintiff raises two theories: that her termination violated both her (1) fundamental right to marry and (2) her freedom of speech (arguing that the termination was really retaliation for her November 1990 report of Mr. Thurston's "misconduct").[1] This court is convinced that she is legally incorrect as to the first theory, and that as to the second she has not alleged sufficient evidence to create a material issue of fact, or to state a *prima facie* case.

The defendant moved for summary judgment on March 16, 1994. The motion was briefed by both sides, and oral argument was held on April 20, 1994. The court is now prepared to rule.

The court finds that any infringement of the plaintiff's fundamental right to marry is outweighed by Judge Shipman's objectively reasonable need to serve a compelling state interest—that is, the proper and just operation of the probation office, and the avoidance of prejudice and conflicts of interest. Also, the plaintiff has not alleged facts that raise a reasonable inference that Judge Shipman's stated reason for the termination (her marriage to Officer Matthew Rosenbarger) was pretextual, and that in fact she was fired in retaliation for protected speech. Alternatively, the plaintiff has not put forth evidence sufficient to show that she would not have been fired for marrying the deputy anyway, even if retaliation was a motivating factor. Thus, because the court finds that based on the pleadings, affidavits, and memoranda, the plaintiff can not show that the termination violated either her constitutional right to marry or her freedom of speech, the defendant's Motion for Summary Judgment is GRANTED.

## SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705,* 984 F.2d 762 (7th Cir.1993).

A thorough discussion of Rule 56 by the Supreme Court of the United States can be found in a trilogy of cases decided in 1986. *See, Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)[2]; and *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A material question of fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

---

1. There is no allegation of retaliation for plaintiff's complaints to the ICRC. Plaintiff was warned that she would be terminated upon her marriage to the deputy sheriff *before* she filed her complaints with the ICRC.

2. For the judicial epilogue of *Celotex,* see *Catrett v. Johns–Manville Sales Corp.,* 826 F.2d 33 (D.C.Cir.1987), *cert. denied,* 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991), or upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992). "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990).

During its analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–255, 106 S.Ct. at 2512–14.

The 1986 Supreme Court trilogy was recently re-examined in *Eastman Kodak v. Image Technical Services*, —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Kodak* is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita.* This view is well supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

### IMMUNITY

■ The court first notes that Judge Shipman's firing of Ms. Rosenbarger is not subject to absolute judicial immunity. Employment decisions concerning probation officers, while a judge's statutory duty, are not a traditional judicial function but rather are an administrative function. *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). As an administrative function, employment decisions by judges are not entitled to absolute judicial immunity. *Id.* at 228–30, 108 S.Ct. at 545–46; *see also Forrester v.*

*White*, 792 F.2d 647, 658–64 (J. Posner, dissenting), *rev'd by* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555, and *McMillan v. Svetanoff*, 793 F.2d 149, 154–55 (7th Cir.1986) (*citing Doe v. County of Lake*, 399 F.Supp. 553 (N.D.Ind.1975)). The defense of qualified judicial immunity was left open by the Supreme Court in *Forrester*, 484 U.S. at 228–30, 108 S.Ct. at 545, but any such defense has not yet been raised by the defendant.

The defendant has also not yet raised any Eleventh Amendment immunity defense. However, it bears mentioning that as the plaintiff is requesting back pay in addition to injunctive relief, there might be significant Eleventh Amendment issues if this case went to trial. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Such issues would be jurisdictional, and not waived.

### FUNDAMENTAL RIGHT TO MARRY

■ Judge Shipman contends that he fired the plaintiff because her marriage to Benton County Deputy Sheriff Matthew Rosenbarger created an unacceptable conflict of interest with her position as a probation officer in Benton County. The plaintiff argues that firing her because of her marriage is an unconstitutional infringement on her fundamental right to marry.

■ This court first notes that there is no dispute that there is indeed a fundamental right to marry. Both sides agree, citing such seminal cases as *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) and *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). However, the defendant is correct that this fundamental right is not absolute.

In *Sebetic v. Hagerty*, 640 F.Supp. 1274 (E.D.Wis.1986), *aff'd sub nom. Heyden v. Schoenfeld*, 819 F.2d 1144 (7th Cir.1987) (table), *cert. denied*, 484 U.S. 899, 108 S.Ct. 235, 98 L.Ed.2d 193 (1987), a Section 1983 case was brought over a policy prohibiting marriage between police officers and police dispatchers. Plaintiff Beverly Sebetic, a police dispatcher, was fired after she married an officer. Among other things, the plaintiffs

contended that the policy and the firing violated the fundamental right to marry.

The court disagreed, stating:

"[R]easonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed." [*Quoting Zablocki*, 434 U.S. at 386, 98 S.Ct. at 681]. Viewing the facts of record in the light most favorable to the plaintiffs, it cannot be said that the Board's no spouse policy significantly interferes with the right to marry. The policy is a reasonable public-safety measure with minimal residual impact on the decision to marry; indeed, the policy did not deter the plaintiffs themselves from getting married.

*Sebetic*, 640 F.Supp. at 1277–78. As in *Sebetic*, the plaintiff in this case was not prevented from marrying. She did, in fact, marry whom she wanted. Judge Shipman's policy against a probation officer marrying a deputy sheriff did not prohibit marriage, as was the case in *Zablocki*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (striking law requiring court approval for marriage of someone with children not in their custody) and *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (striking law prohibiting interracial marriages).

This court is greatly influenced in this case by *McCabe v. Sharrett*, 12 F.3d 1558 (11th Cir.1994). In *McCabe*, a police chief transferred his secretary to a less desirable job for marrying a subordinate police officer, and she sued under 42 U.S.C. § 1983. The district court granted summary judgment, and the Eleventh Circuit affirmed. The police chief claimed that he transferred the secretary because he feared that her marriage would undermine her loyalty to him and her ability to maintain the confidentiality of his office. *McCabe*, 12 F.3d at 1560. The Eleventh Circuit found that "as a matter of common experience" it was "objectively reasonable" for the police chief to fear a breach of confidentiality if his secretary was married to a police officer. *Id.* at 1572.

The *McCabe* court conducted an exhaustive analysis of the constitutional impact of the adverse employment action on the plaintiff's fundamental right to marry. It stated that it was unclear which constitutional analysis should apply when dealing with the right to marry, and so examined the case under three potential analyses: the *Pickering* analysis, the *Elrod–Branti* analysis, and general strict scrutiny. *Id.* at 1564. Under each of these analyses, the court of appeals concluded that summary judgment was appropriate, and the defendant's conduct was not unconstitutional. *Id.* at 1574.

In so finding, the Eleventh Circuit noted that:

While it is clear that an employer's purely subjective fear of disruption is insufficient to outweigh an employee's exercise of her rights [citation omitted], it is also plain that Chief Sharrett's concern that McCabe's marriage would undermine her loyalty to him and thus the confidentiality of his office was reasonable and not merely subjective. It is a matter of common experience that spouses tend to possess a higher degree of loyalty to their marital partners than to their superiors, and often discuss workplace matters with one another, even matters that a superior has designated as confidential.... In fact, because of the particular nature of McCabe's job and Chief Sharrett's job, we believe that it was not only reasonable but necessary for Chief Sharrett to transfer McCabe in order to preserve the confidentiality of his office.

*Id.* This court does not need to be told this by the Eleventh Circuit; it truly is a matter of common sense. It is also important to note that there was never an allegation in *McCabe* of an *actual* breach of confidentiality, and not even an overwhelming likelihood that such a breach *would* occur. *Id.* at 1573.

In the case now before this court, the undisputed facts show even more clearly than in *McCabe* that Judge Shipman's actions were both objectively reasonable and necessary. The confidentiality of a police chief's office is important in maintaining an effective police operation and generally protecting the public (certainly a compelling governmental interest), and a "compromised" secretary could damage the effectiveness of that office. However, the role of a probation officer im-

plicates an even more compelling governmental interest—*directly* affecting the liberty and rights of individual citizens and their access to fair and even-handed justice.

As a probation officer, the plaintiff had tremendously important and highly sensitive discretionary functions, including the ability to significantly affect a convicted person's liberty. The potential for damage to an individual's rights from improper acts by a probation officer is several orders of magnitude greater than such potential by a police chief's secretary. In our society there must be no inference that the judiciary's (here the probation office's) power over individuals' liberty is being misused or abused. The appearance thereof must also be avoided. The integrity of the judicial system demands no less. A violation of the confidentiality of the probation office, or improper motives or acts by a probation officer, can have profoundly adverse and unfair consequences for convicted citizens. Having a spouse on the police force, who is potentially involved to a lesser or greater extent in many of the probation office's cases, can convey an *appearance* of impropriety at the very least.

The plaintiff argues that *McCabe* is distinguishable because the plaintiff there was transferred rather than fired. The Eleventh Circuit's decision was not so narrow. The *McCabe* court very specifically discussed the case in terms of "adverse employment action," which included "not only discharges, but also demotions, refusals to hire, refusals to promote, and reprimands." *Id.* at 1563. There was absolutely no suggestion in *McCabe* that the adverse employment action was okay because it stopped short of termination, and this court does not think such a distinction would be reasonable here.

This case in no way stands for the proposition that it is *per se* inappropriate for a probation officer or member of a judge's staff to marry a police officer, or that such would always be grounds for adverse employment action. Rather, this case is limited to the narrow, factually-undisputed situation of a rural county (1990 population 9,441, according to the *Indiana Legal Directory*), a two-person probation department, a small police force (one sheriff and four deputies, plus a few town marshalls and the state police), and a "local" court. There are conceivably situations in which a larger probation office, wider jurisdictional area, and/or a larger police force would permit lesser or even no employment action in response to a marriage such as this.

However, it is a very different situation when a small-county court, hearing cases primarily investigated and prosecuted locally by a handful of police officers, has two probation officers to which all cases are assigned, and one of those probation officers is married to one of the sheriff's deputies. The judge and the chief probation officer would have to be constantly vigilant as to conflicts, which would obviously be a burden on the Benton County criminal justice system (not only on its use of scarce resources, but also on its integrity). This court is also quite frankly very, very concerned about the right of criminal defendants to receive equal justice under the law in the face of what would at least appear to be divided loyalties.

The plaintiff contends that the defendant could have taken less drastic "adverse employment action," such as the transfer in *McCabe;* she contends that cases can be assigned in the probation office so as to avoid any Marci Rosenbarger–Matthew Rosenbarger connections. The court is convinced that there is no *material* factual dispute on this issue. As a matter of law in this case, Judge Shipman is justified in believing that such a method of case assignments is not an acceptable or workable option. This court is convinced that such a course could not be sufficient to protect the judicial process from actual or *apparent* conflicts of interest.

There is dispute as to the actual percentage of Marci Rosenbarger's cases in which Officer Matthew Rosenbarger would be "involved." The court suspects that the actual "percentage" is incalculable, and is frankly not material considering the facts of this case. The relevant material fact in this case is the connection between a small closely-knit police force and a two-person probation office. The actual conflicts, and even more so the appearance of conflicts, would be unacceptable whether or not a case was officially designated as a "Marci Rosenbarger" or

"Matthew Rosenbarger" case. It would be disruptive and probably impossible on a day-to-day basis to know the extent to which Matthew Rosenbarger was "involved" in a case, or to proscribe Marci Rosenbarger's access to a case if she so wanted. A two-person probation office, sharing a secretary, is such a close atmosphere that merely assigning a case to one rather than the other would not adequately protect against impropriety, or the appearance thereof. Neither the law nor the Constitution would require Judge Shipman to compromise his probation office by retaining Ms. Rosenbarger in this situation.

It cannot be denied that police officers frequently become very strongly involved emotionally as well as intellectually in cases in which they or their co-officers are involved. Likewise, the spouse of a police officer understandably could not be immune to those very real and valid feelings. It is simply not believable that the marital connection might not sway or influence a probation officer's handling of a case, whether consciously or not. Such would be an impropriety which Judge Shipman has every right, indeed a sworn duty, to prevent. This court has no doubt that such an impropriety would actually likely occur, but even if it did not, the possibility creates a powerful *appearance* of impropriety, which is almost as bad. Also, as stated above, in *McCabe* there was no actual occurrence of a breach of confidentiality, just the foreseeable possibility.

Probation officers have a great deal of power and influence over the lives of convicted citizens. A probation officer has wide discretion regarding the contents of a pre-sentence report (*Wagner v. Indiana*, 474 N.E.2d 476, 495 (Ind.1985)), and the pre-sentence reports prepared by a probation officer for a judge oftentimes are the determinative factor in sentencing. A bias or prejudice in preparing a pre-sentence report can have dramatic and drastic ramifications for the convicted person, which would be unconscionable. Such a possibility also provides fodder for an appeal of a sentence, which whether groundless or not would burden the county financially and otherwise. *See generally Lang v. Indiana*, 461 N.E.2d

1110, 1115 (Ind.1984), *Collins v. Indiana*, 422 N.E.2d 1250, 1253 (Ind.App.1981), and *United States v. Oduloye*, 924 F.2d 116, 119 (7th Cir.1991).

Likewise, the relationship between the probationer and the probation officer must not be tainted, or even appear to be so. A citizen of the State of Indiana deserves to be confident of equal and even-handed justice.

The plaintiff argues that any problems could be overcome by assigning all of Officer Matthew Rosenbarger's cases to the other probation officer. In many situations, that might be a perfectly adequate and appropriate solution. Not so here. In many situations, the probation officer with the conflict would be one of many officers, and a reassignment might not be much of a burden. In Benton County, there are only two probation officers. Therefore, there is a one-in-two chance that Officer Matthew Rosenbarger's cases would in the natural course fall to Probation Officer Rosenbarger. The burden here is increased because there is a relatively small pool of police officers typically involved in Benton County criminal matters. The burden placed on the Probation Office and the court to be vigilant against improper case assignments would be unreasonable, and more than justifies termination of Ms. Rosenbarger's employment.

Defendant has put forth several reasons more specific than the concerns of this court discussed above. He believes that it would be difficult for Ms. Rosenbarger to keep confidences relating to her work from her husband; that Deputy Matthew Rosenbarger might try to influence the manner in which Ms. Rosenbarger treated probationers that he or other deputies had arrested; that a proper assignment system would be very difficult; and that it would be unfair to defendants for Judge Shipman to have to judge the credibility of Matthew Rosenbarger in court (in such a small county most would probably know of the Rosenbarger marriage). The interaction between the judge and the deputy could create tension in the working relationship between the judge and the probation officer; judges sometimes have to rule against police officers over things such as warrant requests and credibility de-

terminations. These are all valid concerns, and only serve to highlight this court's determination that as a matter of law, Judge Shipman's concern over the effect of the Rosenbarger marriage on the operation of the probation office is objectively reasonable and outweighs the limited burden on Ms. Rosenbarger's fundamental right to marry.

Plaintiff makes much ado about nothing with her attempt to make an issue of Judge Shipman's "ever-changing description of the conflict." *See* Plaintiff's Memo at 3. Plaintiff points out that Judge Shipman has stated at various times that his concern was over a "conflict of interest," or an "ethical problem," or the effect of Indiana's statutory husband-wife communication privilege in case of any eventual investigation of wrongdoing, or a concern over confidentiality. *Id.* at 2–8. This court does not see how these concerns can be viewed as anything but utterly consistent. They go hand-in-hand. They are all very valid and important concerns, and all support this court's reasoning in granting summary judgment on the issue of the violation of the fundamental right to marry. They also do nothing to raise an inference that Judge Shipman's stated concerns over the marriage were actually pretextual.

### RETALIATORY FIRING

■ Plaintiff's second argument is her contention that her marriage was not the real reason for her firing at all, but that Judge Shipman was actually retaliating against her for previously bringing to his attention allegations of Mr. Thurston's misconduct. The court is willing to assume without discussion for the purpose of this memorandum that Ms. Rosenbarger's allegations against Chief Probation Officer Thurston were indeed statements protected by the First Amendment.[3] Therefore, if it is true that Judge Shipman actually fired Ms. Rosenbarger *because of and in retaliation for* her protected speech, that firing might have been unlawful and Ms. Rosenbarger might be entitled to relief under 42 U.S.C. § 1983. A public employee cannot be dismissed for the nondis-

ruptive exercise of her First Amendment right to speak out on "a matter of legitimate public concern." *Cromley v. Bd. of Ed. of Lockport Township High School District 205,* 17 F.3d 1059, 1067 (7th Cir.1994) (*quoting Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983) *and Pickering v. Board of Education,* 391 U.S. 563, 571, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968)).

■ The plaintiff claims that the reason given for her termination—her marriage to the deputy sheriff—was pretextual, and that the real reason was retaliation for protected speech. *Mount Healthy City School Dist. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), provides the proper test to apply when conduct protected by the First Amendment is alleged to have played a part in the decision to fire a public employee. *Cromley,* 17 F.3d at 1067. *Mount Healthy* provides a burden-shifting formula: Initially, the burden is placed upon the plaintiff to show that her conduct was constitutionally protected (which this court will assume), and that this conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor"—in the judge's decision to fire her. *See Cromley,* 17 F.3d at 1067 (*quoting Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576). If the plaintiff carries that burden, this court must then go on to determine whether the defendant has shown by a preponderance of the evidence that he would have reached the same decision to terminate the plaintiff even in the absence of the protected conduct. *See id.*

■ The plaintiff who alleges retaliation for the exercise of her constitutionally-protected rights thus has the burden of showing that the protected conduct was a "substantial" or "motivating" factor in the defendant's action. *Cromley,* 17 F.3d at 1068 (*citing O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1368 (7th Cir.1993)). Under this test, "the fact that [the plaintiff's] protected speech may precede an adverse employment decision alone does not establish causation under *Mount Healthy.*" *Cromley,* 17 F.3d at

---

**3.** If this case went to trial the plaintiff's motives would be an issue in determining whether her "speech" was protected. *See Colburn v. Trustees* *of Indiana University,* 973 F.2d 581 (7th Cir. 1992). It would not be appropriate in this case to decide that issue in summary judgment.

1068 (*quoting O'Connor*, 985 F.2d at 1370). The plaintiff could have been fired "for a good reason or for no reason at all," as long as it was not because of constitutionally protected activities. *Cromley*, 17 F.3d at 1068. The defendant does not have to prove a legitimate reason for taking adverse action against the plaintiff until the plaintiff has come forth with sufficient evidence to support a *prima facie* case of substantial motivation. *Id.*

Of course, this case is now before the court on a motion for summary judgment, so factual determinations and whether a burden of proof has been "carried" are premature. However, this court can determine whether the plaintiff states a *prima facie* case.

On summary judgment, the district court in *Cromley* found that the plaintiff failed to produce evidence sufficient to support a finding that the plaintiff's protected speech was a substantial factor in the decision to not renew her position. *Id.* The district court held that no reasonable jury could have found that the plaintiff had met her burden of establishing that her protected speech was a substantial factor in letting her go. *Id.* at 1069. Alternatively, the court found that even if the protected speech had been a substantial factor in the adverse employment decision, the same decision would have been made anyway. *Id.* The court of appeals affirmed on both counts. *Id.*

■ The same is true in this case. The plaintiff says that Judge Shipman really fired her because in November 1990 she approached him about concerns she had regarding Chief Probation Officer Thurston. Her four concerns were stated *infra*, page 2. On summary judgment, the validity of her concerns and her motivation behind her report to Judge Shipman are immaterial. Taking all of her factual allegations as true, the court must determine whether she has presented a *prima facie* case; whether she has raised a reasonable inference that both 1) her report on Thurston to Judge Shipman was actually a substantial factor in her termination and 2) she would not have been terminated in any event for marrying the deputy sheriff. This court finds that she has failed to raise a reasonable inference as to either contention.

The plaintiff raises only two items of evidence which she believes provides a reasonable inference that the reason given for the termination was pretextual, and that she was really fired for reporting on Thurston. She contends that: 1) after her report on Thurston, her relationship with Judge Shipman changed; and 2) at the time of her report on Thurston, she asked Judge Shipman whether her job was in jeopardy and he responded "let's just say it is a good thing you didn't tell anyone outside the courthouse."

As for the change in her relationship with Judge Shipman, she declares:

> Immediately after I disclosed to Judge Shipman the information relating to Mr. Thurston's activities, my relationship with and treatment by both Judge Shipman and Mr. Thurston changed substantially in the following respects: I was excluded from discussions regarding cases; I was treated as an outsider; I was treated with suspicion and hostility, particularly by Mr. Thurston; they began looking for fault in my performance and undermining my activities, instead of supporting me.

Plaintiff's Memo at 12; Rosenbarger declaration at ¶ 3. The plaintiff does not explain why Thurston's attitude toward her is relevant to Judge Shipman's motivation for her termination, and the above declaration is not clear of what she is accusing Judge Shipman (who fired her), as opposed to Mr. Thurston (who is not a party here). Defendant cites *Rennie v. Dalton*, 3 F.3d 1100 (7th Cir.1993), for the proposition that plaintiff's subjective feeling is not sufficient to create a reasonable inference. The court agrees with the defendant that the plaintiff has not alleged evidence concrete enough to state a *prima facie* case of retaliation.

Judge Shipman *reappointed* Ms. Rosenbarger to her position as probation officer shortly after her report on Thurston. When Judge Shipman was told of the engagement, *approximately eight months after the plaintiff's report on Thurston*, he told Ms. Rosenbarger that a marriage between a probation officer and a deputy sheriff would create a conflict of interest, and if she married the

deputy sheriff she would be terminated. She was not terminated until *nine months later*, actually the day before her wedding. Judge Shipman kept Ms. Rosenbarger as an employee, although she could have been fired at any time for no reason at all, for seventeen months after the incident for which she now claims retaliation. She was told that she could not be a probation officer and be married to a deputy, she married a deputy nine months later, and she was terminated at that time.

Furthermore, the plaintiff has not raised a reasonable inference that she would not have been fired in any event for her marriage to the deputy sheriff, *even if her report on Thurston was in fact a substantial factor in the decision to terminate her.* This memorandum has exhaustively covered this topic, and need not repeat itself. There are myriad reasons for not permitting the spouse of a Benton County deputy sheriff to work as a Benton County probation officer. This court is convinced that the reasons are not only legitimate, but *compelling.* Judge Shipman has a sworn duty to avoid the kind of conflicts or apparent conflicts that might hinder justice. Deputy Sheriff Matthew Rosenbarger does not work for Judge Shipman; the judge only had authority over Marci Rosenbarger. In this case, it is clear that Ms. Rosenbarger would have been terminated because of her marriage to Matthew Rosenbarger, whatever other reason there might have been. As in *McCabe,* 12 F.3d at 1574, this court is convinced that removing Mrs. Rosenbarger from the probation office was "not only reasonable but necessary." Therefore, whether or not her report on Thurston played any part in the decision is of no consequence. *See Cromley,* 17 F.3d at 1069.

### CONCLUSION

To whatever extent Ms. Rosenbarger's termination intruded on her fundamental right to marry, it was an objectively reasonable burden and was legally justified. Her right to marry was not thwarted; she married whom she wanted. Her choice did certainly have negative employment consequences; she was fired. However, the defendant's actions were objectively reasonable considering the circumstances in the light most favorable to the plaintiff, and the termination did not impermissibly burden the plaintiff's fundamental right to marry.

The plaintiff claimed in the alternative that her marriage was a pretext, and that she was actually fired in retaliation for her unfavorable report to Judge Shipman regarding Chief Probation Officer Thurston. However, the plaintiff has failed to allege evidence that would raise a reasonable inference that her report on Thurston was a substantial motivating factor in Judge Shipman's decision to terminate her. Furthermore, she has not alleged evidence that would create a reasonable inference that, whatever other motivations might have been at work, she would not have been fired for marrying a deputy sheriff anyway. Indeed, this court is convinced that her marriage compelled her termination, and therefore whatever other motivations may have been involved are legally immaterial.

The defendant's motion for summary judgment is hereby **GRANTED. SO ORDERED.**