DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Tracy S. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her three minor children and placed the children in the permanent custody of Summit County Children Services Board ("CSB"). We affirm.
 {¶ 2} Mother is the natural mother of L.S., born July 22, 2001; N.S., born July 9, 1999; and D.S., born December 10, 1997. The children's father ("Father") is not a party to this appeal. On July 2, 2003, the children were removed from the *Page 2 
home pursuant to Juv.R. 6 following an incident of domestic violence between Mother and Father. When police responded to the incident, they discovered that the home was dirty and in disarray, there was no food for the children, and the children were dirty and hungry. CSB filed a complaint the next day, which alleged that the three children were neglected and dependent.
 {¶ 3} On September 26, 2003, the children were adjudicated dependent. The parents spent the next two years working on their case plans. The primary concerns of CSB were the long history of domestic violence in the home, Father's problem with substance abuse, Mother's mental health issues, and both parents' lack of steady employment and inability to provide for the basic needs of their children.
 {¶ 4} The children were returned to the home during August 2004, but problems with domestic violence soon developed again. The parents agreed that Father would leave the home, pursuant to a court order, so the court would permit the children to remain in the home. Because Father never did leave the home, the children were again removed from the home and placed in foster care.
 {¶ 5} Father later moved to Virginia during August or September of 2005. According to what Mother told CSB, she was planning to divorce Father and he had little contact with the family after he moved to Virginia. On December 30, 2005, because CSB believed that Mother had made significant progress on her case plan and Father was living in Virginia, the trial court placed the children in *Page 3 
her custody under an order of protective supervision. The case worker continued to monitor the placement and observed that Father was no longer living there, Mother was employed, Mother and the children were going to counseling, and the two oldest children were enrolled in school. On March 23, 2006, following a hearing at which Mother represented that she was involved in a relationship with another man and was planning to divorce Father, the trial court terminated protective supervision and closed the case.
 {¶ 6} Shortly thereafter, when the caseworker attempted to contact Mother with some follow-up paperwork, she discovered that Mother and the children were no longer living in their home. The caseworker contacted the children's school and learned that the children had not been attending the school and that the school had received a request for their school records from a school in Tazewell County, Virginia. Further investigation revealed that Mother and the children had moved to Virginia and were living with Father and his parents.
 {¶ 7} On April 12, 2006, the guardian ad litem moved to vacate the trial court's March 23, 2006 judgment pursuant to Civ.R. 60(B). The guardian ad litem contended, among other things, that Mother had committed a fraud on the court by representing that she had resolved the problem with domestic violence in her home because she was planning to divorce Father and that she was "absolutely not" planning to move to Virginia where Father resided. According to the guardian ad *Page 4 
litem, CSB and the guardian had learned that Mother immediately moved with the children to Virginia to live with Father.
 {¶ 8} On April 17, 2006, following a hearing on the Civ.R. 60(B) motion, the trial court vacated its March 23, 2006 judgment that had closed the case. The court found that the March 23 judgment should be vacated pursuant to Civ.R. 60(B)(3) because "Mother clearly deceived the Court." The trial court ordered that the children be returned to the temporary custody of CSB.
 {¶ 9} On May 23, 2006, CSB moved for permanent custody of the three children. Following a hearing on the motion, the trial court found that the children had been in the temporary custody of CSB for more than 12 of the prior 22 months and that permanent custody was in their best interests. Consequently, the court terminated Mother's parental rights and placed the children in the permanent custody of CSB. Mother appeals and raises four assignments or error, which will be addressed out of order for ease of discussion.
 ASSIGNMENT OF ERROR I "The trial court erred by claiming jurisdiction over children that were residents of the Commonwealth of Virginia."
 ASSIGNMENT OF ERROR III "The trial court erred by denying Appellant-Mother due process when it failed to conduct a shelter care hearing or an adjudication hearing after the children were ordered removed from their home in Virginia and transported to Ohio." *Page 5 
 {¶ 10} We will address these assigned errors jointly because both challenge a judgment over which this Court had no jurisdiction.
 {¶ 11} Through her first assignment of error, Mother challenges the trial court's April 17, 2006 order that vacated its March 23, 2006 judgment that closed this case after custody of the children had been returned to Mother. "An order vacating a judgment under Civ.R. 60(B) is a final appealable order and an appeal must be taken therefrom within 30 days under App.R. 4(A)." Bates Springer, Inc. v. Stallworth (1978), 56 Ohio App.2d 223, 229; see, also, R.C. 2505.02(B)(3). Pursuant to App.R. 4(A), Mother had 30 days to file a timely appeal from that order, but she did not file a notice of appeal until December 7, 2006. Because Mother did not timely appeal from the April 17, 2006 order, we lack jurisdiction to address the merits of her first assignment of error. SeeIn re S.J., 9th Dist. No. 23199, 2006-Ohio-6381, at ¶ 10.
 {¶ 12} Through her third assignment of error, Mother contends that she was denied due process because CSB did not institute a new case by filing a complaint, which would have triggered statutory protections of her due process rights. Mother is again challenging the procedure by which the trial court reopened this case through its April 17, 2006 judgment granting the Civ.R. 60(B) motion to vacate. As explained above, Mother did not timely appeal that order and we lack jurisdiction to address its propriety. *Page 6 
 {¶ 13} Although Mother suggests that her first and third assignments of error challenge the subject matter jurisdiction of the trial court, and therefore can be raised at any time during the proceedings, she is mistaken. The subject matter jurisdiction of a court refers to the type of case that the court is authorized to hear. A court does not exceed its subject matter jurisdiction as long as the case before it involves "`any cause of action cognizable by the forum.'" State v. Swiger (1998),125 Ohio App.3d 456, 462, quoting Avco Fin. Serv. Loan, Inc. v.Hale (1987), 36 Ohio App.3d 65, 67.
 {¶ 14} The subject matter jurisdiction of the juvenile court is set forth in R.C. 2151.23. That jurisdiction explicitly includes original jurisdiction over child dependency and neglect cases. See R.C.2151.23(A)(1). This case clearly fell within the subject matter jurisdiction of the juvenile court because it involved allegations through CSB's complaint, and a later adjudication by the court, that L.S., N.S., and D.S. were dependent children.
 {¶ 15} Mother's real argument is that the trial court improperly invoked its jurisdiction by reopening a case that it had previously closed. The Ohio Supreme Court has explained that the improper exercise of jurisdiction is clearly distinguishable from the subject matter jurisdiction of the court:
 "The term `jurisdiction' is also used when referring to a court's exercise of its jurisdiction over a particular case. See State v. Parker, 95 Ohio St.3d 524, 2002-Ohio-2833, 769 N.E.2d 846, ¶ 20 (Cook, J., dissenting); State v. Swiger (1998), 125 Ohio App.3d 456, 462, 708 N.E.2d 1033. `"The third category of jurisdiction [i.e., jurisdiction over the particular case] encompasses the trial court's *Page 7 
authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable."' Parker at ¶ 22 (Cook, J., dissenting), quoting Swiger, 125 Ohio App.3d at 462, 708 N.E.2d 1033." Pratts v. Hurley, 102 Ohio St.3d 81, 83-84, 2004-Ohio-1980, at ¶ 12.
 {¶ 16} Mother's claim that the trial court improperly invoked its jurisdiction by granting the Civ.R. 60(B) motion to vacate merely challenges the trial court's authority to exercise its jurisdiction in this case. Even if her challenge had merit, it would have rendered the judgment voidable, not void, and necessarily should have been raised through a timely appeal from the April 17, 2006 judgment. See id.
 {¶ 17} Consequently, as Mother did not timely appeal the trial court's April 17, 2006 judgment, we lack jurisdiction to address her first and third assignments of error and will not reach their merits.
 ASSIGNMENT OF ERROR II "The trial court erred and violated the Appellant-Mother's fundamental rights by granting [CSB's] motion for permanent custody, and said ruling was against the manifest weight of the evidence."
 {¶ 18} Through her third assignment of error, Mother contends that the trial court's decision granting permanent custody to CSB, based primarily on the fact that Mother remained with her husband, was in violation of her fundamental rights to remain married to her husband and to raise her children. *Page 8 
 {¶ 19} Mother's only argument is that her right to remain married and her right to raise her children are fundamental and that the trial court's decision violated her fundamental rights, suggesting that the state cannot infringe upon these rights for any reason. "A parent does have a fundamental right to care for and have custody of his or her child." In re Willis, 3rd Dist. No. 1-02-17, 2002-Ohio-4942, ¶ 9, citingSantosky v. Kramer (1982), 455 U.S. 745, 753. It is also true that there is a fundamental right to marry. See, e.g., Zablocki v. Redhail (1978),434 U.S. 374, 374; Loving v. Virginia (1967), 388 U.S. 1, 12. Neither of these fundamental rights is absolute, however. See Rosenbarger v.Shipman (N.D.Ind. 1994), 857 F.Supp. 1282, 1286. The interests of the state, in protecting children, must necessarily be balanced against Mother's right to raise her children and/or to remain married to her husband. See In re Hayes (1997), 79 Ohio St.3d 46, 48; Zablocki,434 U.S. at 388.
 {¶ 20} Mother does not argue that the balancing of interests weighed in her favor and we are not inclined to reach an argument that was not made. It is clear from the record that the state had reason to impinge upon Mother's familial rights because there was a long-standing problem with domestic violence in the home that had negatively impacted the children. Reunification of this family necessarily required a remedy to that problem. Despite community services offered by CSB, the parents had been unable to resolve the problem with violence between them. Father had failed to remedy his substance abuse problem and, although he *Page 9 
completed an anger management program, he continued to be violent with Mother and she continued to be violent with him. Mother had represented to CSB again and again that she was going to remedy the family's domestic violence problem by ending her relationship with Father. There is nothing in the record to indicate that CSB gave her no other choice but to end her marriage; that appears to have been her agreed solution to the problem.
 {¶ 21} Although Mother failed to articulate a factual argument that the trial court's decision was against the weight of the evidence, she did assign it as error. Because this case involves the termination of parental rights, in the interests of justice, we have reviewed the record for evidence supporting the trial court's decision.
 {¶ 22} When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286 at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), *Page 10 20 Ohio App.3d 172, 175; see, also State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 23} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99.
 {¶ 24} The trial court held that the first prong of the permanent custody test was satisfied because the children had been in the temporary custody of CSB for more than 12 of the prior 22 consecutive months. See R.C. 2151.414(B)(1)(d). The record supports that finding and Mother does not argue otherwise.
 {¶ 25} Next, we turn to the best interest prong of the permanent custody test. When determining whether a grant of permanent custody is in the child's best interest, the juvenile court must consider the following factors:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; *Page 11 
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; [and]
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]" R.C. 2151.414(D)(1)-(4)[1].
 {¶ 26} The interaction and interrelationship of the children with their parents was intertwined with the violence in the parents' marriage. The children love their Mother and she loves them, but the children have grown up in a home filled with violence. According to the evidence, each parent perpetrated violence against the other. The evidence demonstrated that, although the children were not themselves assaulted physically, they were continually exposed to physical and verbal violence between their parents. Once, in the presence of the children, Father choked Mother to the point that she nearly lost consciousness. The children had apparently been exposed to this violence for most of their lives and, when they first went into foster care, they would act out domestic violence situations while playing house. The two older children had expressed to others that they feared the *Page 12 
violence and would sometimes leave the home to get away from it. One child indicated that the foster home was the only place she felt safe.
 {¶ 27} Mother has never disputed that the violence in the home was a problem and that her children were impacted by it. The police were called to the home repeatedly, leading to two convictions against Father for domestic violence. Mother admitted that she was afraid of Father. She explained that she sometimes called the police before the violence got out of hand because she was afraid of what would happen. The police would arrive and that would often cause Father to leave the home.
 {¶ 28} The violence was likely fueled further by Father's substance abuse problem. During the pendency of this case, however, Father did not resolve his substance abuse problem but continued to test positive for various illegal drugs. He did complete an anger management program, but he continued to perpetrate violence against Mother.
 {¶ 29} Mother told CSB and the court again and again that she was going to end her relationship with Father, but she kept going back to him. At one point, Mother filed for divorce but the case was dismissed because she did not prosecute. Each parent got a no contact order against the other at different stages of this case, yet they continued to violate the orders by reuniting with each other.
 {¶ 30} As was suggested by the guardian ad litem, Mother and Father chose to preserve their destructive relationship with each other at the expense of their *Page 13 
relationship with their children. This case had gone on for over three years and, after all that time, the children's relationship with their parents still involved the same problem with violence in the home.
 {¶ 31} From the in camera interviews of the two older children, the testimony of the caseworker and the guardian ad litem, the trial court concluded that N.S. would like to return home and live with both his parents, D.S. wished to remain in the foster home but to continue to have contact with her parents, and L.S. was too young to express her wishes. The guardian ad litem opined that permanent custody was in the best interests of the children because they had been exposed to a long history of domestic violence in the home. Mother minimized the problem and, consequently, had done little to address it. As the guardian emphasized, the parents had chosen to maintain their own relationship with each other rather than working toward reunification with their children.
 {¶ 32} The custodial history of the children involved well over twelve months in CSB temporary custody. This case began more than three years before the permanent custody hearing and these three children had been continually in and out of CSB custody during that time. CSB removed them from the home and, because Mother would appear to be remedying the problems in the home, the children were returned and then the violence started all over again. The trial court gave Mother repeated opportunities to remedy the problems in her home. At the time of the permanent custody hearing, however, she had not ended the violence in *Page 14 
her home, she did not have stable employment or secure housing, and she was not attending counseling.
 {¶ 33} For three years, the children had been through this back and forth cycle several times, which was extremely difficult for these young children. The children had indicated to others that they felt that their parents had let them down. They were in need of a legally secure permanent placement, which could not be achieved by placing them with their parents and there were no suitable relatives who were willing to take long-term custody of them. Consequently, the trial court concluded that a legally secure permanent placement could only be achieved by terminating parental rights and placing the children in the permanent custody of CSB.
 {¶ 34} Given the evidence before the trial court, we cannot say that it lost its way in finding that permanent custody was in the best interests of L.S., N.S., and D.S. The second assignment of error is overruled.
 ASSIGNMENT OF ERROR IV "The trial court abused its discretion by vacating the March 23, 2006 judgment entry in order to obtain jurisdiction over Virginia residents, not appointing counsel for the children until after the permanent custody trial, and by granting permanent custody based on alleged events occurring in Virginia."
 {¶ 35} To the extent that Mother again challenges the trial court's April 17, 2006 judgment through this assigned error, we lack jurisdiction to reach those arguments for the reasons explained above. *Page 15 
 {¶ 36} Through a two-sentence argument, Mother also contends that the trial court erred by failing to appoint independent counsel for the children until after the permanent custody hearing. Mother contends that the children were entitled to independent counsel because there was a conflict between the wishes of the children and the recommendation of the guardian ad litem. See In re A. T., 9th Dist. No. 23065,2006-Ohio-3919, at ¶ 55-65.
 {¶ 37} The trial court initially denied the request for appointment of separate counsel. After the permanent custody hearing, however, the trial court reviewed its prior in-camera interview of the children and determined that, because one of the children had indicated that he would like to live with his parents, there was an apparent conflict between his wishes and the opinion of the guardian ad litem. Therefore, the trial court appointed separate counsel for the children at that time and did not make a decision on the permanent custody motion until after the children's attorney had the opportunity to give input on their behalf. The trial court provided the children's attorney with a transcript of the permanent custody hearing and gave her an opportunity to call or recall any witnesses on the children's behalf and to submit a brief on behalf of the children. The attorney determined that it was not necessary to call or recall any witnesses.
 {¶ 38} Therefore, although the trial court did not appoint counsel for the children until after the hearing had been held, it provided counsel with every opportunity to give input on behalf of the children into the trial court's permanent *Page 16 
custody decision. Mother has failed to even argue, much less demonstrate, that this procedure was not adequate to protect the children's interests in the permanent custody determination.
 {¶ 39} Mother also challenges the permanent custody determination, asserting that the decision was based solely on events that occurred after the case was closed in March 2006. As was explained above, the trial court's permanent custody decision encompassed the entire history of this case and was not confined to the events that occurred after the case was closed in March 2006. This case spanned a period of over three years, with Mother maintaining throughout that she could provide her children a home environment that was free from domestic violence. She was given repeated opportunities to be reunited with her children, but time after time she again exposed them to domestic violence in the home. For the reasons explained in this Court's disposition of Mother's second assignment of error, the trial court did not err in its permanent custody decision. The fourth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into *Page 17 
execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
DICKINSON, J. CONCURS
[1] The factor set forth in R.C. 2151.414(D)(5) is not relevant in this case.