Marcella Ann CROMLEY,
Plaintiff–Appellant,

v.

BOARD OF EDUCATION OF LOCKPORT TOWNSHIP HIGH SCHOOL DISTRICT 205, Donald E. Weber, Richard J. Dittle, et al., Defendants–Appellees.

No. 93–1300.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 1993.

Decided March 3, 1994.

Kenneth N. Flaxman, Chicago, IL (argued), for plaintiff-appellant.

John M. Izzo, David P. Kula (argued), Scariano, Kula, Ellch & Himes, Chicago Heights, IL, for defendants-appellees.

Before FAIRCHILD, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Marcella Ann Cromley, a high school teacher, brought an action under 42 U.S.C. § 1983. She claimed that she had been denied various administrative positions because she had exercised her right to free speech as guaranteed by the First Amendment and made applicable to the states by the Fourteenth Amendment. The district court granted summary judgment to the defendants Board of Education of Lockport Township High School District 205 and its superintendent, assistant superintendent, principal, and one teacher (the "defendants"). It also denied Ms. Cromley's motion to disqualify defendants' attorneys. She now appeals the judgment of the district court. For the reasons that follow, we affirm.

I

## BACKGROUND

A. *The First Amendment Retaliation Claim* [1]

Ms. Cromley has been a high school reading instructor in the Lockport Township High School District 205 since 1974. She had served as the Chair of the Reading Department and "Chapter I Coordinator" from 1978 to 1987. In December 1986, two students complained to her of sexual misconduct by a male teacher in her department, Donald Meints. After Ms. Cromley informed her supervisor, principal Richard Dittle, he undertook an investigation. Interviews with the students and with Meints established that the allegations were basically true. The principal and other administrators decided that Meints should be reprimanded and warned. Although a written summary of the reprimand was placed in the District office file, no report was included in Meints' personnel file or sent to the Illinois Department of Children and Family Services ("DCFS").

However, on February 12, 1987, Ms. Cromley reported the incident to DCFS. Moreover, on March 4, 1987 Ms. Cromley, as Reading Department Chair, gave Meints a harsh written evaluation, in which she noted the students' allegations. Meints, in turn, sent an angry rebuttal to the plaintiff, principal, and union representative. On March 27, 1987, school officials notified Ms. Cromley that the Reading Department was being merged with the English Department and would be chaired by a teacher from the English Department. Ms. Cromley's later applications to serve as Chapter I Coordinator, Associate English Department Chair, and English Department Chair were denied. Until 1987 she had been praised and reappointed each year as Chair of the Reading Department; however, her principal's 1986–87 evaluation of her work reported personnel problems in the department and concerns over her effectiveness in the department.

---

1. The district court set forth the underlying facts in detail in its earlier memorandum and order denying a motion to dismiss. *Cromley v. Board of Educ. of Lockport Township High Sch. Dist.* 205, 699 F.Supp. 1283 (N.D.Ill.1988). In this opinion, we present only the facts pertinent to the issues raised on appeal.

There was evidence, as well, of friction between Ms. Cromley and both the principal and the superintendent. In light of these clashes, the principal and assistant superintendent agreed that they could not recommend either Ms. Cromley or Mr. Meints for leadership positions.

Ms. Cromley filed suit on November 12, 1987 under 42 U.S.C. § 1983, against the Board of Education, the named administrators, and Donald Meints. The complaint alleged that the defendants had retaliated against her because she had complained to DCFS about the sexual misconduct of Meints, a complaint which she asserted was protected speech.

On November 8, 1989, after two years of pretrial litigation, Ms. Cromley's attorney, Larry Weiner, accepted a partnership in the law firm of Scariano, Kula, Ellch & Himes, Chtd., which was representing the defendants. The district court granted Mr. Weiner's oral motion to withdraw as Ms. Cromley's attorney on November 29, 1989, and, on December 15, 1989, Mr. Weiner formally became a partner. Ms. Cromley moved for the disqualification of the Scariano firm from representation of the defendants.

B. *District Court Decisions*

By Order of March 19, 1990, the district court denied Ms. Cromley's motion to disqualify defendants' attorneys on the ground that the "barriers erected between the attorney and his new law firm with respect to this case are sufficient to rebut the presumption of shared confidences." *Cromley v. Board of Educ. of Lockport Township High Sch. Dist. 205*, No. 87 C 9767, 1990 WL 37198 at *1 (N.D.Ill. March 20, 1990).

By Order of January 6, 1993, the district court granted defendants' motion for summary judgment. *Cromley v. Board of Educ.*, No. 87 C 9767, 1993 WL 5934 (N.D.Ill. Jan. 6, 1993). The court set forth the framework for analyzing a public employee's First Amendment right of free speech. It acknowledged that this analysis requires that, in order to be afforded First Amendment protection, the

employee's speech must relate to a matter of public concern and the employee's right to speak out must outweigh the government's interest in promoting effective and efficient public service. *See Connick v. Myers*, 461 U.S. 138, 147–54, 103 S.Ct. 1684, 1690–94, 75 L.Ed.2d 708 (1983). The court noted that, under this analysis, the parties did not dispute that Ms. Cromley's call to DCFS was protected speech. However, the court held that Ms. Cromley's written annual evaluation of Meints several weeks later was private communication that was not protected speech. With respect to this latter communication, the court reasoned that this critical evaluation, following Ms. Cromley's earlier complaints about Meints to the school administration and to DCFS (for which Meints had received an oral reprimand), was a persistent re-raising of a closed issue rather than protected speech pertaining to matters of public concern. It further noted that Ms. Cromley's supervisors could take into account the impact of that harsh evaluation on continuing relationships in the school when deciding whether to allow her to continue in a supervisory capacity.[2]

The district court then considered whether there was sufficient evidence for a trier of fact reasonably to conclude that the protected speech (Ms. Cromley's phone call to DCFS) was a substantial and motivating cause of the merger and of her failure to attain leadership positions. The court noted that the School Board's decision focused on Ms. Cromley's administrative rather than on her teaching abilities; the clear concern was the possible repercussion resulting from placing either Ms. Cromley or Meints in a supervisory position over the other. The district court concluded, therefore, that Ms. Cromley's protected speech had not been a substantial factor in the Board's decision. As an alternate holding, the district court held that, even if the protected speech had been a substantial factor, a trier of fact could not conclude reasonably that, "but for the single call to DCFS," there would have been no merger. Nor could it conclude reasonably that Ms. Cromley would have been selected as English Department Chair, Associate

---

2. The district court's characterization of the evaluation is not contested on appeal, and we therefore need not pass on the correctness of that holding.

Chair, or Chapter I Coordinator. Accordingly, the district court granted summary judgment to all defendants.

## II

## ANALYSIS

Ms. Cromley submits on appeal that the district court·erred in denying the disqualification of the Scariano law firm representing the defendants and in granting summary judgment to the defendants. We shall consider each issue in turn.

### A. *Attorney Disqualification*

▆▆▆ Our review of the district court's decision whether to disqualify an attorney is usually a deferential one: We shall reverse that determination only if the district court abused its discretion. *United States v. Smith*, 995 F.2d 662, 675 (7th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 718, 126 L.Ed.2d 683 (1994); *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir.1993); *United States v. Defazio*, 899 F.2d 626, 629 (7th Cir.1990). However, when all evidence is submitted in the form of affidavits, and when the district court does not hold an evidentiary hearing or make findings of fact to which we must defer, "district courts enjoy no particular advantage over appellate courts in their formulation of ethical norms." *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982). After a complete review of the record, we conclude that the district court's decision to deny Ms. Cromley's motion to disqualify must be affirmed under either an abuse of discretion or de novo standard of review.

The approach taken by this circuit for determining whether an attorney should be disqualified is a three-step analysis.

> First, we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If we conclude this presumption has not been rebutted, we must then determine whether

the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make the disqualification proper.

*Schiessle v. Stephens*, 717 F.2d 417, 420 (7th Cir.1983) (citing *LaSalle Nat'l Bank v. Lake County*, 703 F.2d 252, 255–56 (7th Cir.1983)); *see also United States v. Goot*, 894 F.2d 231, 235 (7th Cir.), *cert. denied*, 498 U.S. 811, 111 S.Ct. 45, 112 L.Ed.2d 22 (1990); *Freeman*, 689 F.2d at 722; *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978).

The "substantial relationship" test is easily met in this case. It is undisputed that the subject matter under scrutiny both before and after Mr. Weiner changed law firms was the litigation brought by Ms. Cromley against the School Board. The only change made was attorney Weiner's shift from the firm of Schwartz & Freeman, the firm representing Ms. Cromley, to that of Scariano, Kula, Ellch & Himes, the firm representing the School Board. Because Mr. Weiner's representation of Ms. Cromley before he moved to the Scariano firm is substantially related to his new firm's relationship to the School Board, a "presumption of shared confidences" arises:

> Implicit in a finding of substantial relationship is a presumption that particular individuals in a law firm freely share their client's confidences with one another.... [However, i]n *Novo*, we recognized that the presumption that an attorney has knowledge of the confidences and secrets of his firm's clients is rebuttable.

*Freeman*, 689 F.2d at 722 (citing *Novo Terapeutisk Laboratorium v. Baxter Travenol Lab., Inc.*, 607 F.2d 186, 197 (7th Cir.1979) (en banc)).

▆▆▆ As a first step in deciding whether that presumption has been rebutted, "we must determine whether the attorney whose change of employment created the disqualification issue was actually privy to any confidential information his prior law firm received from the party now seeking disqualifi-

cation of his present firm." *Id.*[3] The rebuttal can be established either by proof that "the attorney in question had no knowledge of the information, confidences and/or secrets related by the client in the prior representation," *see Schiessle,* 717 F.2d at 420 (citing *Freeman,* 689 F.2d at 723), or by proof that screening procedures were timely employed in the new law firm to prevent the disclosure of information and secrets, *see Goot,* 894 F.2d at 235 (citing *LaSalle Nat'l Bank,* 703 F.2d at 259). Uncontroverted affidavits are sufficient rebuttal evidence. *Freeman,* 689 F.2d at 723; *Novo,* 607 F.2d at 197.

Because Mr. Weiner, Ms. Cromley's attorney for two years, clearly had confidential information from his client when he moved to the firm representing the defendant School Board, we must focus on whether the Scariano law firm that Mr. Weiner later joined has demonstrated that it had established an effective screening procedure to block the disclosure of Ms. Cromley's confidences within the "new" firm.

> [T]he presumption of shared confidences could be rebutted by demonstrating that "specific institutional mechanisms" (e.g., "Chinese Walls") had been implemented to effectively insulate against any flow of confidential information from the "infected" attorney to any other member of his present firm.

*Schiessle,* 717 F.2d at 421 (citing *LaSalle Nat'l Bank,* 703 F.2d at 259). The types of institutional mechanisms that have been determined to protect successfully the confidentiality of the attorney-client relationship include: (1) instructions, given to all members of the new firm, of the attorney's recusal and of the ban on exchange of information; (2) prohibited access to the files and other information on the case; (3) locked case files with keys distributed to a select few; (4) secret codes necessary to access pertinent informa-

tion on electronic hardware; and (5) prohibited sharing in the fees derived from such litigation. *See Goot,* 894 F.2d at 235–36; *Schiessle,* 717 F.2d at 421; *LaSalle Nat'l Bank,* 703 F.2d at 259. Moreover, the screening devices must be employed "as soon as the 'disqualifying event occurred.' " *Goot,* 894 F.2d at 235 (quoting *LaSalle Nat'l Bank,* 703 F.2d at 259). Other factors have been considered helpful in determining whether adequate protection of the former client's confidences has been achieved: the size of the law firm, its structural divisions, the "screened" attorney's position in the firm, the likelihood of contact between the "screened" attorney and one representing another party, and the fact that a law firm's and lawyer's most valuable asset is "their reputations for honesty and integrity, along with competence." *Analytica,* 708 F.2d at 1276–77 (Coffey, J., dissenting); *see also Schiessle,* 717 F.2d at 421; *Freeman,* 689 F.2d at 723. In addition, the attorneys in question must have affirmed these screening devices under oath. *See Goot,* 894 F.2d at 235; *LaSalle Nat'l Bank,* 703 F.2d at 259. The district court must find that the internal safeguards applied indeed did shield effectively the "tainted attorney."

In this case, the defendants have rebutted the presumption of shared confidences by describing the timely establishment of a screening process. When Mr. Weiner joined the firm he was denied access to the relevant files, which were located in a different office, under the control of David Kula, the partner handling the case. Mr. Weiner and all employees of the firm were admonished not to discuss any aspect of the case, and all were subject to discipline. In addition, Mr. Weiner was not allowed to share in the fees derived from this case. The defendants also submitted the affidavit of David Kula, the attorney representing them. In that sworn statement Mr. Kula stated that, as soon as he

---

**3.** In *Analytica, Inc. v. NPD Research Inc.,* 708 F.2d 1263 (7th Cir.1983), this court held that the presumption of shared confidences was irrebuttable when an entire law firm changed sides. *Id.* at 1267. We acknowledged in *Analytica,* however, that a lawyer who changes jobs and moves to a firm retained by an adversary "can avoid disqualification by showing that effective measures were taken to prevent confidences from being

received by whichever lawyers in the new firm are handling the new matter." *Id.* In the case now before us, one attorney changed employment from the firm representing the plaintiff to a firm representing the defendants. This circumstance falls within the exception recognized in *Analytica;* therefore our analysis does not conflict with that decision. *See Schiessle,* 717 F.2d at 420 n. 2.

was informed that his law firm was discussing with Mr. Weiner the possibility of Mr. Weiner's joining the law firm, he and Mr. Weiner "agreed that absolutely nothing of a substantive nature regarding the instant lawsuit would occur" until decisions were made and the clients were made aware of them. R.51, Aff. at 2. The affidavit describes the procedures that were put in effect from December 15, 1989, the date that Mr. Weiner joined the firm. Mr. Weiner's new office was in Scariano's downtown Chicago building, and Mr. Kula's office was located in the firm's Chicago Heights office; each came to the other office only for specific business. Mr. Kula maintained the files for this case in his private office. When it implemented specific screening procedures, the firm required all members and employees of the firm to read and sign the memorandum describing the internal rules. R.51, Ex. A (Memorandum) and Ex. B (checklist of all employees of firm). Mr. Kula affirmed that "all of the admonitions of the screening memo have been adhered to by all attorneys and all support staff employed by this firm." We conclude, as did the district court, that the Scariano law firm successfully rebutted the presumption of shared confidences by proving that the screening procedures were timely employed and fully implemented.

Nevertheless, Ms. Cromley contends that a *per se* rule of disqualification is needed in this case: This court should require the withdrawal both of her former attorney and of the Scariano law firm he joined while representing her. Even if "specific institutional mechanisms" are in place, she insists, they cannot go far enough "to maintain public confidence in the legal profession." *Freeman*, 689 F.2d at 721.

■ We cannot agree with this contention. In the first place, the presumption of shared confidences has been found to be irrebuttable only when an entire law firm changes sides, *see Analytica*, 708 F.2d at 1267, and not when one attorney changes sides. Moreover, in *Freeman*, this court recognized that, although the court's duty is "to safeguard the sacrosanct privacy of the attorney-client relationship," it must also be recognized that "disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary." *Freeman*, 689 F.2d at 721. Thus, in deciding the appropriate safeguards necessary in the case of attorney disqualification, we must balance the respective interests of the parties and the public. *See Goot*, 894 F.2d at 236. We hold that the measures employed by the Scariano law firm sufficiently screened Ms. Cromley's former counsel from the School Board's present counsel.

■ Taking another approach, Ms. Cromley also suggests that Mr. Weiner has not avoided "even the appearance of professional impropriety," in contravention of Canons 4 and 9 of the American Bar Association's Code of Professional Responsibility. We are constrained to disagree; we believe that the carefully constructed safeguards do indeed avoid the appearance of impropriety:

> The test has been described by this circuit as embodying the substance of Canon 4 of the A.B.A. Code of Professional Responsibility, which protects the confidences of a client against disclosure and possible use against him, and of Canon 9, which provides that an attorney must avoid even the appearance of impropriety. Thus, the question before a district court considering a motion for disqualification is "whether it could reasonably be said that during the former representation the attorney might have acquired information related to the subject matter of the subsequent representation."

*LaSalle Nat'l Bank*, 703 F.2d at 255 (quoting *Cannon v. U.S. Acoustics Corp.*, 398 F.Supp. 209, 223 (N.D.Ill.1975), *aff'd in part, rev'd in part*, 532 F.2d 1118 (7th Cir.1976)). Accordingly, our analysis under the three-prong "substantial relationship" test, which has led us to the conclusion that disqualification is not required, likewise causes us to conclude that attorney Weiner has not breached the Code of Professional Ethics in his representation of Ms. Cromley.

The district court, following the three-step test for disqualification of attorneys, found that the barriers erected between the attorney and his new firm were appropriate. The

record is devoid of any evidence that Mr. Weiner actually divulged client confidences. Therefore, we conclude that the district court did not err in determining that Scariano's screening process was sufficient to prevent disqualification.

### B. Summary Judgment

■ Ms. Cromley's challenge to the summary judgment determination is a narrow one.[4] She states that the defendants abolished her position as Chair of the Reading Department, and merged the Reading Department into the English Department, only after she made her constitutionally protected complaint about another teacher's sexual misconduct to DCFS. She then contends that the defendants have failed to come forward with evidence that her complaint was not a substantial motivating factor in the abolition of her position.

■ At the outset, we note that the district court resolved this issue against the backdrop of settled law that a public employee cannot be dismissed for the nondisruptive exercise of his First Amendment right to speak out on "a matter of legitimate public concern." *Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983) (quoting *Pickering v. Board of Education,* 391 U.S. 563, 571, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968)). Under the analysis employed in *Connick,* a public employee may be disciplined for speech on a matter of public concern only when the importance of that speech is outweighed by "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick,* 461 U.S. at 150, 103 S.Ct. at 1692.

When measured against the analytical approach mandated by *Connick,* it is clear that the district court's determination that Ms. Cromley's call to DCFS was protected expression rests on solid ground.[5] First, it is clear that the speech involved a matter of public concern. *Connick* elaborates that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement." *Id.* at 147–48, 103 S.Ct. at 1690. Here, the communication on possible child abuse was made by Ms. Cromley in her capacity as an official of the school system to the authorities responsible for protecting children from such harm. Second, we have no quarrel with the district court's determination that the importance of reporting such activities to authorities charged with the responsibility of protecting children outweighs whatever disruptive effect making such a call might have on the school office.

We turn therefore to Ms. Cromley's claim that the defendants have failed to prove that her protected speech, the call to DCFS, was not a substantial or motivating factor in the abolition of her position as Chair of the Reading Department. She bases her claim on the Supreme Court decision *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

■ Ms. Cromley is correct in asserting that *Mount Healthy* provides the proper test to apply when conduct protected by the First Amendment (as defined by *Connick* ) is alleged to have played a part in the decision not to rehire a public employee: The test is "one which likewise protects against the invasion of constitutional rights without commanding undesirable consequences not necessary to the assurance of those rights." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. It is a burden-shifting formula:

Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or, to put it in other

---

4. Ms. Cromley asserts that, because the defendants failed to file the depositions in support of their motion for summary judgment, reversal of the summary judgment determination is required under Rule 56 of the Federal Rules of Civil Procedure and Rule 12(m) of the Local General Rules for the United States District Court for the Northern District of Illinois. This position is untenable. It is clear that the local rules of the

district afforded Ms. Cromley ample opportunity to submit whatever deposition testimony she believed appropriate. *See* Local General Rule 18.

5. The district court addressed this matter in its earlier opinion dealing with the sufficiency of the complaint. *See Cromley,* 699 F.Supp. at 1297.

words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

*Id.; see Price Waterhouse v. Hopkins,* 490 U.S. 228, 245, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989) (characterizing the *Mount Healthy* test as a "balance of burdens"). The plaintiff who alleges retaliation for the exercise of his constitutionally protected rights thus has the burden of showing that the protected conduct was a "substantial" or "motivating" factor in the defendant's action. *O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1368 (7th Cir.1993). If the plaintiff meets this burden, the burden then shifts to the defendant to prove by a preponderance of the evidence that the plaintiff would not have attained the position he sought even without the protected speech considerations. *Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir.1992).

▬ Under this test, "the fact that [the plaintiff's] protected speech may precede an adverse employment decision alone does not establish causation under *Mount Healthy*." *O'Connor,* 985 F.2d at 1370. The plaintiff could have been turned down "for a good reason or for no reason at all," as long as it was not because of constitutionally protected activities. *Garrett,* 961 F.2d at 633. The defendant does not have to prove a legitimate reason for taking adverse action against the plaintiff until the plaintiff has come forth with sufficient evidence to support a prima facie case of substantial motivation. *Id.* An employer's presentation of uncontradicted evidence that the department was being reorganized establishes a legitimate reason for not reappointing this plaintiff. *Id.* at 634 (stating that a "re-organization is a legitimate reason to terminate someone who is performing satisfactorily") (citing *Misek v. City of Chicago,* 783 F.2d 98 (7th Cir.1986)). The plaintiff can, of course, challenge the legitimacy of the reorganization. *Id.*

The district court was of the view that Ms. Cromley failed to produce evidence sufficient to support a finding that the call to DCFS, admittedly protected speech, was a substantial factor in the decision not to renew her administrative position. It was also of the view, expressed as an alternative holding, that, even if the call had been a substantial factor in the decision, it was clear that the decision not to reappoint her would have been made in any event. We believe that the district court was correct in both estimations.

▬ Ms. Cromley contends that the decision to merge these departments was made spontaneously on March 27, 1989, and was not based on any legitimate educational purpose. *See* R.101, ¶¶ 11.03, 11.04 at 8–9 (Plaintiff's Response to Defendants' Statement of Uncontested Facts). The defendants agree that Ms. Cromley was told of the merger by the principal on March 27, 1989, but explain that the merger had been recommended in 1982, and that discussions had been ongoing at the administrative level since the fall of 1986 and were "probably finalized in early March [1987] regarding curriculum and implementation of the English recommendations." R.95, ¶¶ 11.03, 11.04 at 62 (Defendants' Statement of Uncontested Facts). Even though she disputes these facts, Ms. Cromley does not deny a conversation in 1986 with the assistant principal concerning the administration's reasons for wanting a merger of the two departments.[6] Because these statements by the defendants,

---

**6.** The following facts set forth by the defendants were uncontested by Ms. Cromley in her Response to Defendants' Statement of Uncontested Facts at R.101:

11.14 Cromley understood from discussions with Ward that the administration wanted to combine the English and Reading Departments so that students would not be able to go through four years of high school without taking an English course. [CRM Dep. 370–371]

11.15 This conversation about the possibility of combining English and Reading occurred in the fall of 1986. [CRM Dep. 371]

11.16 The Union President Fender had heard numerous people talking about the merger of English and Reading and it had been a possibility and a topic of discussion for many years at Lockport High School. [FND Dep. 111] R.95 at 65.

including some taken from the plaintiff's own deposition, are uncontested, they must be treated by the court as admitted. *See Schulz v. Serfilco, Ltd.,* 965 F.2d 516, 519 (7th Cir. 1992) (stating that, because plaintiff failed to respond to enumerated Rule 12(m) statements, the facts were deemed admitted by plaintiff under Rule 12(n)). Therefore, Ms. Cromley's claim that the merger decision was made spontaneously after her telephone call to DCFS cannot support an assertion that the call to DCFS was a substantial factor in the decision against reappointment.

Moreover, even if the merger of the departments had occurred without earlier discussion with Ms. Cromley and even if we were to construe such thin circumstantial evidence to raise a triable issue as to whether the call to DCFS was a substantial factor in the decision not to reappoint Ms. Cromley, she could not avoid summary judgment on this basis. Ms. Cromley still would not have answered the defendants' contention that the reorganization would have occurred even absent her call to DCFS. As the district court concluded, it was clear that the superintendent, knowing of the broader conflict between Ms. Cromley and Meints, would not have let her remain in a supervisory role over him, even if she had not called DCFS. With respect to the Chapter I Coordinator position, the district court noted that, although this position did not require direct supervision over Meints, it did require that the incumbent work well with the school administration. The district court stated that, by the time this position was filled, Ms. Cromley's working relationship with school officials had deteriorated substantially for reasons that did not hinge on the call to DCFS. This analysis is entirely consistent with the *Connick* Court's position that, "[w]hen close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." *Connick,* 461 U.S. at 151–52, 103 S.Ct. at 1692.

Because Ms. Cromley did not present evidence, direct or circumstantial, to refute the stated, legitimate reasons for not reappointing her, reversal of the summary judgment is not warranted. Ms. Cromley met her initial burden by alleging adequately that she had exercised her constitutional right of free speech, and that the School Board had retaliated. However, we agree with the district court's conclusion that no reasonable jury could find that Ms. Cromley has met her burden of establishing that her complaint to DCFS was a substantial factor in the decision to merge the two departments. Nor, assuming arguendo that she did meet her burden of demonstrating that the call was a substantial factor, did she show that the decision against reappointment would have been any different. She could not ignore the defendants' assertions in their Statement of Uncontested Facts that her protected speech was not a substantial factor in the decision and that, even if that speech had been such a factor, the decision of the defendants would have been the same. Ms. Cromley has failed to contest the substantial accuracy of those contentions; therefore, summary judgment was appropriate.[7]

### Conclusion

We conclude that the district court did not err in denying Ms. Cromley's motion for disqualification of defendants' attorneys. We also hold that the district court properly granted summary judgment to the defendants. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

7. *Cf. O'Connor v. Chicago Transit,* 985 F.2d 1362, 1371 (7th Cir.1993) (affirming the grant of summary judgment in a public employee discharge case in which the record established that the decision-maker was unaware of the employee's whistleblowing activities and the employee had a record of gross insubordination); *Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1081 (7th Cir.1992) (holding that summary judgment was appropriate when the plaintiff alleged that political affiliation was a motivating factor in her discharge; her superior, by affidavit, denied any knowledge of her political affiliation; and plaintiff, in response, did not provide any evidence to rebut that statement).