**GTE NORTH, INC., Plaintiff,**

v.

**APACHE PRODUCTS COMPANY, Belvidere Daily Republican Co., Dean Foods Company, Manley Motor Sales Company, and The Pillsbury Company, successor in interest to the Green Giant Company, Defendants.**

**No. 95 C 50197.**

United States District Court,
N.D. Illinois,
Western Division.

Jan. 31, 1996.

---

Charles F. Helsten, Hinshaw & Culbertson, Rockford, IL, David C. McCormack, Hinshaw & Culbertson, Brookfield, WI, for Plaintiff.

Bryan G. Selander, Holmstrom & Kennedy, Rockford, IL, Daniel E. Vineyard, Houston, TX, John H. Maville, Belvidere, IL, Jon S. Faletto, Howard & Howard, P.C., Peoria, IL, Mark Mayer, Hubbard, Hubbard, O'Brien & Hall, Chicago, IL, Susan L. Walker, Wildman, Harrold, Allen & Dixon, Chicago, IL, W.C. Blanton, Popham, Haik, Schnobrich & Kaufman, Ltd., Minneapolis, MN, for Defendants.

### *MEMORANDUM OPINION AND ORDER*

REINHARD, District Judge.

### INTRODUCTION

Plaintiff, GTE North, Inc. ("GTE"), has brought a cost recovery action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* against Apache Products Company, Belvidere Daily Republican Co., Dean Foods Company, Manley Motor Sales Company, and The Pillsbury Company. GTE moves to disqualify attorney Jon S. Faletto and the law firm of Howard & Howard, counsel for one of the defendants, Dean Foods Company ("Dean Foods").

### BACKGROUND[1]

This cost recovery action arises out of the clean up of the Belvidere Landfill Superfund Site, located in the City of Belvidere, Illinois. GTE moves to disqualify Howard & Howard and Faletto, a member of that firm, on the basis of their involvement with the investigation that preceded the filing of this lawsuit. In 1989, the U.S. Environmental Protection Agency gave notification of Potentially Responsible Party ("PRP") status to various companies. Five of these companies, including Chrysler Corporation and GTE, formed the Appleton Road Committee ("Appleton Committee") and executed a joint remedial cost sharing agreement ("Appleton Agreement"). The purposes of the Appleton Agreement were to allocate each member's share of shared response cost,[2] cooperate in investigating and identifying additional PRPs, and to pursue cost recovery activities against any additional PRPs. Pursuant to the agreement, each member agreed to abide by its allocated share of responsibility and agreed not to sue or take civil action against any other member. The Appleton Agreement also included confidentiality provisions which provided that all shared information between the members and their counsel shall "be held in strict confidence by the receiving member and by all persons to whom such confidential information is revealed by the receiving member." The agreement further provided that the disclosure of such confidential information shall not constitute a waiver of the attorney-client or work-product privilege. In essence, the agreement resolved all liability and allocation issues between the members of the Appleton Committee.

In relation to potential cost recovery activities, the Appleton Agreement provided for the formation of a separate committee designed to pursue any additional PRP. That provision states:

> The cost recovery action will be prosecuted in the name of each Member who chooses to join the action. Each such Member may serve on the Cost Recovery Committee. The Cost Recovery Committee will direct the course of the litigation and will determine whether to accept settlement from Additional PRPs and whether to distribute funds arising from the action. The Cost Recovery Committee will act by majority vote. Each Member will have as many votes as its Member's percentage from Exhibit A times 100.

Pursuant to this provision, those members of the Appleton Committee who had elected to pursue cost recovery, including Chrysler

---

1. The facts were submitted to the court by way of the parties' briefs and do not materially differ. Thus, the court accepts the following facts as true for purposes of this motion.

2. The members of the Appleton Committee settled their liability with the United States by a consent decree issued in April of 1989. GTE became a signatory to that consent decree in March of 1993.

and GTE, entered into a second agreement entitled "Agreement To Share The Cost of Investigation" ("Investigation Agreement"). This agreement implemented a joint investigation of additional PRPs who had not participated in the clean up of the landfill. The members intended to use the information obtained from this joint investigation solely for a joint cost-recovery action against any additional PRP who was not a member of the Appleton Committee. Like the Appleton Agreement, the Investigation Agreement contained several confidentiality provisions, which extended to the Cost Recovery Committee members themselves and all persons to whom such confidential information was transmitted by the members. The law firm of Hinshaw & Culbertson, which was also counsel for GTE, coordinated the investigation on behalf of GTE and the Cost Recovery Committee. During the investigation, Chrysler was represented by Faletto, who was, and remains, a member of the law firm Howard & Howard.

Pursuant to the Investigation Agreement, Hinshaw & Culbertson disseminated "confidential communications" to all members. In addition, counsel for each member (including Faletto) jointly met on several occasions to discuss strategy for conducting the investigation, the investigation results themselves, the relative legal merit of proceeding against certain defendants, including Dean Foods, and the legal strategy for bringing the cost-recovery action. At the close of the investigation, Chrysler notified the other members of the Cost Recovery Committee on March 13, 1995 that it would not participate in any cost-recovery litigation and assigned its rights of indemnity and contribution to each of the remaining members of the Cost Recovery Committee.

After obtaining the assigned rights of the other members of the Cost Recovery Committee (including Chrysler), GTE filed this present action against the defendants. Faletto, of Howard & Howard, has appeared on behalf of Dean Foods to defend it in the cost recovery action. Prior to undertaking legal representation of Dean in this matter, Howard & Howard fully disclosed its intention to do so to Chrysler and obtained Chrysler's consent.

## CONTENTIONS

GTE contends that Faletto owes GTE a fiduciary duty to maintain the confidences disclosed during the earlier investigation by virtue of an implied attorney-client relationship between Faletto and GTE. This implied attorney-client relationship arose from the peculiar relationship between the members of the Cost Recovery Committee and the circumstances under which confidential information was disclosed. In support of its contention, GTE relies on the confidentiality provisions in both the Appleton and Investigation agreements and the fact that confidential information and legal strategy was freely communicated between all of the Cost Recovery Committee members and their attorneys. GTE moves to disqualify the entire firm of Howard & Howard on the basis of imputed disqualification. Alternatively, GTE contends that fundamental fairness bars Faletto and Howard & Howard from representing Dean Foods in this matter. Faletto and Howard & Howard contend that in order for an implied attorney-client relationship to exist, GTE must show that it supplied information with the reasonable belief that Faletto was acting as GTE's attorney. Similarly, they contend any belief held by GTE that Faletto acted as GTE's attorney is unreasonable in light of the fact that GTE was represented by its own counsel, Hinshaw & Culbertson. Further, Faletto and Howard & Howard contend that in order to prevail under a theory of fundamental fairness, GTE must show that it had a pre-existing attorney-client relationship with Faletto, a relationship which GTE fails to demonstrate.

## DISCUSSION

Ethical questions before a district court are governed by federal case law. *See Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 722 (7th Cir.1982). In determining whether Faletto and Howard & Howard should be disqualified, the court applies the Rules of Professional Conduct for the Northern District of Illinois. *See, e.g., Healy v. Axelrod Const. Co. Defined Benefit Pension*

*Plan and Trust,* 155 F.R.D. 615, 620 (N.D.Ill. 1994). GTE seeks to disqualify Faletto and Howard & Howard pursuant to Rule 1.9, which addresses conflicts of interest involving former clients, and Rule 1.10, which disqualifies an entire firm where a member of that firm is prohibited from representing the new client under Rule 1.9.[3] The court addresses the disqualification of Faletto first.

■ Rule 1.9, in pertinent part, provides:

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which the person's interests are materially adverse to the interests of the former client unless the former client consents after disclosure.

N.D.Ill.R.P.C. 1.9(a). Disqualification pursuant to Rule 1.9 is proper, therefore, if:

1) an attorney-client relationship existed in the past;

2) the present litigation involves a matter that is "substantially related" to the prior litigation;

3) the present client's interests are materially adverse to the former client's interests; and

4) the former client has not consented to the disputed representation after consultation.

*Cf. English Feedlot, Inc. v. Norden Lab., Inc.,* 833 F.Supp. 1498, 1506 (D.Colo.1993) (applying Colorado Rule of Professional Conduct 1.9(a)); *see also Cole v. Ruidoso Mun. Sch.,* 43 F.3d 1373, 1384 (10th Cir.1994). Faletto does not contest the fact that the matters are the same or substantially related,[4] nor does he contest the fact that the interests are materially adverse. Rather, the issue here is whether GTE satisfies the threshold requirement of being a former client for purposes of Rule 1.9. GTE does not contend an express attorney-client relationship existed between itself and Faletto, rather, GTE contends that an implied attorney-client relationship existed by virtue of Faletto's involvement during the joint pre-suit investigation. Hence, the issue this court must decide is whether some sort of fiduciary relationship arose between them that would make GTE a "former client" for purposes of disqualification under Rule 1.9.

This issue is not entirely unfamiliar to our circuit. In *Westinghouse Elec. Corp. v. Kerr–McGee Corp.,* 580 F.2d 1311 (7th Cir.), *cert. denied,* 439 U.S. 955, 99 S.Ct. 353, 58 L.Ed.2d 346 (1978), the Seventh Circuit provided four common examples of where, although there is no express attorney-client relationship, a fiduciary obligation or an implied professional relationship nevertheless exists. One example in particular, set forth in *Westinghouse,* is relevant here:

When information is exchanged between co-defendants and their attorneys in a criminal case, an attorney who is the recipient of such information breaches his fiduciary duty if he later, in his representation of another client, is able to use this information to the detriment of one of the co-defendants, even though that co-defendant is not the one which he represented in the criminal case. *Wilson P. Abraham Const. Corp. v. Armco Steel Corp.,* 559 F.2d 250 (5th Cir.1977) (disqualification case).

---

**3.** GTE actually moves pursuant to ABA Model Rules of Professional Conduct 1.9 and 1.10, which are identical to N.D.Ill. RPC 1.9 and 1.10, respectively.

**4.** If this element was at issue, the court would be required to apply the "substantial relationship test" as defined by the Seventh Circuit. That test involves a three-part inquiry. First, the court would factually reconstruct the scope of the prior legal representation. Second, it would determine whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it would determine whether that information is relevant to the issues raised in the litigation pending against the former client. *LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252, 255–56 (7th Cir.1983). Once a substantial relationship is found, a presumption arises that the attorney received confidential information. *Id.* at 256. While in most circumstances this presumption is rebuttable, it is irrebuttable where the attorney or law firm has changed sides. *Cromley v. Board of Educ. of Lockport High Sch. Dist. 205,* 17 F.3d 1059, 1065 n. 3 (7th Cir.1994). For reasons discussed *infra,* the fact that there is a substantial relationship in this case does not give rise to a presumption that Faletto was privy to confidential information.

*Westinghouse,* 580 F.2d at 1319. The court added that a "fiduciary relationship may result because of the nature of the work performed and the circumstances under which confidential information is divulged." *Id.* at 1320.

■ Although the co-defendant disqualification example in *Westinghouse* would have fallen under Canon 9 of the ABA Model Code of Professional Responsibility because it creates the "appearance of impropriety," the example applies with equal force under Rule 1.9 of both the N.D.Ill.R.P.C. and the ABA Model Rules. While Rule 1.9 generally rejected the "appearance of impropriety" standard of Canon 9 in favor of a fact-based test, it did not reject the "appearance of impropriety" standard in so far as that standard embodies the substantial relationship test. Patrick E. Donovan, Comment, *Serving Multiple Masters: Confronting The Conflicting Interests That Arise In Superfund Disputes,* 17 B.C.Envtl.Aff.L.Rev. 371, 378–79 (1990). The court's reading of *International Paper Co. v. Lloyd Mfg. Co.,* 555 F.Supp. 125 (N.D.Ill.1982) comports with this view. In *International Paper Co.,* Judge Hart applied the "substantially similar *Gulf Oil* test" to a co-defendant situation. *Id.* at 134. When applied under Canon 9 of the ABA Model Code of Professional Responsibility, that test required an additional showing that the attorney in question "actually received confidential information" and that the information could be used against the co-defendant. *Id.* Thus, the difference between a disqualification under Canon 4 and Canon 9 in applying the substantial relationship test is that under Canon 9, no presumption exists that the attorney was privy to confidential information. Accordingly, the court finds that the substantial relationship test, as it has been applied under Canon 9, applies with equal efficacy under Rule 1.9, and where there is no direct or express attorney-client relationship, it requires a showing that the attorney in question was privy to confidential information. *See Rio Hondo Implement Co. v. Euresti,*

903 S.W.2d 128, 132 (Tex.Ct.App.1995) (applying the test under Rule 1.9).

■ By definition, therefore, there must actually have been an exchange of confidential information. Thus, GTE's assertion that there is a presumption that confidential information was exchanged is in error, as the presumption exists only where there is an express attorney-client relationship and the matters are substantially related. *See Wilson P. Abraham Const. Corp. v. Armco Steel Corp.,* 559 F.2d 250, 253 (5th Cir.1977) (holding that there is no presumption absent a direct attorney-client relationship). Accordingly, the court must inquire whether confidential information was exchanged between GTE and Chrysler and their respective counsel, as well as consider the circumstances under which such exchanges occurred, in order to determine whether a fiduciary relationship existed.

■ Ordinarily, the proper method for a district court to make such a determination would be to either conduct an evidentiary hearing or review evidence submitted in the form of affidavits. *See Cromley v. Board of Educ. of Lockport Township High Sch. Dist. 205,* 17 F.3d 1059, 1064 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 74, 130 L.Ed.2d 28 (1994). While neither side has submitted affidavits or requested an evidentiary hearing, they have not contested each other's statement of facts.[5] Accordingly, the court shall determine whether GTE has carried its burden to show an exchange of confidential information based on the undisputed facts contained in the parties' memorandums.

■ The sole purpose of the Cost Recovery Committee was to jointly investigate and pursue any additional PRPs that may exist. The mere fact that GTE and Chrysler executed confidentiality agreements, by itself, does not mean that their respective attorneys exchanged confidential information. It is not disputed, however, that pursuant to their agreement, Hinshaw & Culbertson dissemi-

**5.** Although Faletto and Howard & Howard contend that GTE's claim that "confidential information" was exchanged is vague because GTE does not disclose the specific content of that information, they do not contest the fact that Hinshaw &

Culbertson, GTE's counsel, disseminated investigation results, nor do they contest the fact that Faletto participated in joint strategy discussions, discussions which included possible claims against Dean Foods.

nated the investigation results to each member's respective counsel, including Faletto. In addition, it is undisputed that counsel for each member, including Faletto, jointly discussed the investigation results, strategy, and legal merit of proceeding against additional PRPs, including Dean Foods. These undisputed facts alone support a finding that confidential information was exchanged between the co-plaintiffs and their respective counsel. The fact that no officer, shareholder, or employee of GTE (excluding its counsel) ever consulted with Faletto with the expectation that Faletto or any Howard & Howard attorney would provide legal representation to GTE does not change this conclusion. Were this a requirement in every situation, no co-defendant (or in this case, co-plaintiff) who retained its own counsel would be able to demonstrate the existence of a fiduciary relationship. Rather, it is sufficient that the information collected by GTE and its counsel from the investigation was jointly shared, discussed, and disseminated between each respective Cost Recovery Committee member's attorney for the purpose of a joint civil prosecution.[6]

Similarly, the circumstances under which this confidential information was disclosed lead the court to conclude that a fiduciary relationship arose between GTE and Faletto for purposes of disqualification under Rule 1.9. The confidentiality provisions contained in both the Appleton Agreement and the Investigation Agreement clearly establish an intent that the shared information would remain confidential and would remain protected under the attorney-client privilege. The disclosures by GTE via its counsel to Faletto, Chrysler's counsel, were made with the expectation that they would not be disclosed to the targets of the investigation. Faletto's receipt of such disclosures and participation in meetings obligated him to refrain from reappearing on the opposite side of the same litigation to which such information would be highly pertinent. *See Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir.1983). Accordingly, Faletto's appearance on behalf of Dean Foods is a violation of Rule 1.9, and Faletto is disqualified from representing Dean Foods in this matter.

Next, the court must determine whether the entire firm of Howard & Howard is disqualified under Rule 1.10. Rule 1.10(a) provides:

No lawyer associated with a firm shall represent a client when the lawyer knows or reasonably should know that another lawyer associated with that firm would be prohibited from doing so by Rules 1.7, 1.8(c), or 1.9, except as permitted by Rules 1.10(b), (c), or (d), or by Rule 1.11 or Rule 1.12.

At all times relevant, Faletto has been a member the Howard & Howard firm. Thus, this is not a situation of imputed disqualification where an attorney has changed firms, *see, e.g., Cromley*, 17 F.3d at 1064, and the exceptions to Rule 1.10(a) are clearly not applicable. *Mustang Enter., Inc. v. Plug–In Storage Sys., Inc.*, 874 F.Supp. 881, 887 (N.D.Ill.1995), *supplemented by*, No. 94–C–6263, 1995 WL 55226 (N.D.Ill. Feb. 8, 1995). Because Howard & Howard, as a firm, has changed sides, there exists an irrebuttable presumption of shared confidences. *Cromley*, 17 F.3d at 1065 n. 3 (citing *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir.1983). Thus, Rule 1.10 bars the entire firm from representing Dean Foods. Accordingly, the law firm of Howard & Howard is disqualified from representing Dean Foods in this matter.

## CONCLUSION

For the foregoing reasons, GTE's motion to disqualify Jon S. Faletto and the firm of Howard & Howard as counsel for Dean Foods is granted.

---

**6.** Thus, this case is distinguishable from *International Paper Co.* on the basis that, unlike the counsel in that case, Faletto was privy to confidential information. *See International Paper Co.*, 555 F.Supp. at 134.