**Varden C. MILLER, Plaintiff,**

v.

**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY,[1] Defendant.**

**No. 94 C 5176.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 13, 1996.

1. Since this action was brought, Union Pacific    Railroad Company has acquired Chicago and

**504**

J. Dillon Hoey, James Louis Farina, Brian Culley Walker, Patrick W. Walsh of Hoey and Farina, Chicago, IL, for Plaintiff.

George H. Brant of Union Pacific Railroad Company, Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

As stated in this Court's September 9, 1996 memorandum opinion and order (the "Opinion," a copy of which is attached to this opinion), C & NW has very recently filed a motion seeking to disqualify the lawyer and law firm who have represented Varden Miller ("Miller") from the beginning of this Federal Employers Liability Act ("FELA") action against C & NW. Because C & NW's original memorandum in support of its motion had not focused sufficiently on the key issue involved (even though this Court had earlier identified that issue orally when the motion was originally tendered), the Opinion directed both sides to provide memoranda (or at least relevant citations) in advance of this morning's status hearing.

Both counsel have been good enough to do so. For its part C & NW has provided no case law references beyond those adduced in its original memorandum—and with that memorandum having already been found insufficient to the task, C & NW certainly has offered no satisfactory grist for the decisional mill. Miller's lawyer has done somewhat better on the legal front by pointing not only to *LaSalle Nat'l Bank* (cited by this Court in Opinion at 506, without its then having undertaken any research beyond its own recollection) but also to two later Seventh Circuit cases that support Miller's position, *Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir.1983) and *United States v. Goot*, 894 F.2d 231, 234–35 (7th Cir.1990). Quite surprisingly, neither side has cited an even more recent case from our Court of Appeals that has not only reconfirmed both (1) the rebuttability of the presumption of shared confidences and secrets and (2) the effectiveness of appropriate screening procedures (the proverbial "Chinese Wall") to accomplish such rebuttal but—perhaps even more importantly for present purposes—that has done so in a situation startlingly parallel to the current one: *Cromley v. Board of Educ.*, 17 F.3d 1059, 1064–65 (7th Cir.1994).[2]

What controls in this instance is not only those two legal propositions but also the exemplary manner in which Miller's law firm has conformed to the dictates set out by our Court of Appeals' decisions. Because the firm's screening procedures represent a model of the conduct to be followed by any law firm that takes in a new lawyer who could

---

North Western Railway Company, f/k/a Chicago and North Western Transportation Company ("C & NW"). In the interest of simplicity this opinion (like the Opinion) will refer to C & NW throughout.

2. As might have been expected, *Cromley* cited *LaSalle*, *Schiessle* and *Goot*—and interestingly, it also cited as additional supporting authority the two Seventh Circuit cases that C & NW has unsuccessfully sought to invoke to its own aid: *Freeman v. Chicago Musical Instrument Co.*, 689

otherwise create problems of potential disqualification, this opinion has also atached the two affidavits (including the intrafirm memorandum) with which Miller's firm has supplemented its legal memorandum.

In summary, Miller's counsel has demonstrated beyond question that no disqualification is called for here. C & NW's motion is denied.

## APPENDIX

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Varden C. Miller, Plaintiff,

v.

Chicago and North Western Transportation Company,[1] Defendant.

94 C 5176

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

C & NW has just filed a motion seeking to disqualify the lawyer and law firm who have represented Varden Miller ("Miller") from the beginning of this Federal Employers Liability Act ("FELA") action against C & NW. This opinion is triggered by the failure of C & NW's opening memorandum to give any real (let alone adequate) attention to the only key issue posed by its motion (even though this Court had expressly focused the attention of both parties on that very issue).

At the previously-scheduled status hearing of September 4, 1996,[2] C & NW's new lawyer George Brant, Esq. ("Brant") announced the intention to move swiftly to disqualify Miller's counsel, as well as stating the reason for the expected motion. It did not take much know-how in that area of the law of lawyer disqualification to have generated this Court's immediate inquiry as to whether Miller's counsel had erected the proverbial "Chinese wall" around its newly-acquired lawyer whose shift of associations had led to the expected motion. When Miller's long-term lawyer answered that question in the affirmative, this Court instructed Brant to address the issue whether that would suffice to avoid disqualification.

Before this opinion turns to C & NW's current submission, only a brief description of the factual matrix for the motion is needed. This case presents the disqualification issue in the starkest outline. Throughout this lawsuit C & NW has been ably represented by George Brugess, Esq. ("Brugess"), one of C & NW's five in-house trial lawyers and an experienced hand at FELA litigation. Brugess displayed that experience throughout his handling of the case, including C & NW's submission of (1) a partially-successful summary judgment motion and (2) a complex motion in limine that (even though ultimately unsuccessful in principal part) similarly exhibited good-quality work. Now, with the case just about ready for trial, Brugess has switched sides—he has joined the "enemy" (from C & NW's viewpoint) by becoming a member of the small law firm that has represented Miller from the start.

Little wonder then that this Court's immediate response, when advised of that situation by C & NW's new attorney Brant, was to tell both sides that the establishment and efficacy (both factually and legally) of a Chinese wall—a total screening—were the obvious issues for discussion. Yet C & NW's memorandum, filed with the motion to disqualify just two days later, does not even speak to

---

F.2d 715, 722–23 (7th Cir.1979) and *Novo Terapeutisk Laboratorium v. Baxter Travenol Lab., Inc.*, 607 F.2d 186, 197 (7th Cir.1979) (en banc).

**1.** Since this action was brought, Union Pacific Railroad Company has acquired Chicago and North Western Railway Company, f/k/a Chicago and North Western Transportation Company ("C & NW"). In the interest of simplicity this opinion will refer to C & NW throughout, even though some of the activity referred to here postdated the acquisition.

**2.** That status hearing had been scheduled for a "fish or cut bait" report from the parties as to whether settlement was likely, failing which this Court had then expected to set a very short timetable for the filing of a final pretrial order so that the case could be set for an early trial.

that question. Instead it spends all of its discussion on factors that are so much a slam dunk that they barely need mention. And, for example, the memorandum's sole mention of a Seventh Circuit case that this Court was already familiar with as containing a thorough treatment of the problem (*LaSalle Nat'l Bank v. County of Lake,* 703 F.2d 252, 257–59 (7th Cir.1983) [3]) is a sort of by-the-way citation of that case for a different proposition that is really a given in this instance (C & NW Mem. 6).

Thus it needs neither argument nor citation to recognize the obvious fact that Brugess necessarily has to be in possession of valuable C & NW confidences as a result of his direct handling of this very action. Nor does it require argument or citation to understand the impermissibility of his communicating any of those things to C & NW's adversary Miller (or, the same thing, to Miller's counsel). But those things, needlessly dwelt on in C & NW's Memorandum ("needlessly" because they are indeed so painfully obvious), represent only the background for the *real* questions requiring analysis:

    1. whether our Court of Appeals continues to regard the presumption of the disqualified lawyer's disclosure of such confidences and secrets as rebuttable; and

    2. whether proof of an effective screening of the tainted lawyer (in this instance Brugess) suffices to rebut that presumption and thus to prevent disqualification of his new associates and their law firm from representing Miller.

Accordingly both Brant and Miller's counsel are ordered to bring brief memoranda to the next scheduled status hearing on September 13 (or even better, to deliver such memoranda to this Court's chambers before the end of the day on September 12, so that this Court will be enabled to review the cases cited there before the September 13 status hearing), addressing both of those questions (and any other questions that either side's counsel believes are really vital to the current inquiry). Because of the exceedingly short timetable involved, it will be entirely acceptable to this Court if those brief memoranda do nothing more than to cite the relevant cases and other authorities, without expansive description or argument.

Date: September 9, 1996

PLAINTIFF'S EXHIBIT A

### AFFIDAVIT OF JAMES L. FARINA

    I, James L. Farina, being duly sworn and on oath, do hereby depose and state as follows:

    1. I am a partner in the law firm of HOEY & FARINA and am primarily responsible for the litigation of the case of *Miller v. Chicago & NorthWestern Transp. Co.* ("CNW").

    2. I am personally familiar with the safeguards that our law firm has established for the purpose of erecting a "Chinese Wall" in the employment of attorney George T. Brugess.

    3. On July 31, 1996, five days before Mr. Brugess reported for work with our firm, a memorandum (attached hereto as Exhibit B) was distributed to all employees instructing them to not discuss any aspect of *any* pending CNW or Union Pacific ("UP") cases in Mr. Brugess's presence. The memorandum also denied Mr. Brugess access to those files. (The word "files" is understood to mean *all* documents relating to a case.)

    4. In addition to the directions contained in the above-stated memorandum, all six cases our office has pending against the former CNW and/or UP were removed from our common file cabinets and placed in my personal office cabinets, to which only I have the key, prior to distribution of the July 31 memorandum.

---

**3.** Even without research, this Court had also been aware of *Manning v. Waring, Cox, James, Sklar & Allen,* 849 F.2d 222, 225–26 (6th Cir. 1988), which not only cites *LaSalle Nat'l* as part of our Court of Appeals' development of what the Sixth Circuit characterizes as "the most realistic view of the methodology to be followed in resolving competing interests raised by such a disqualification motion" (*id.* at 225) but also cites to several then-existing examples from other jurisdictions and authorities (*id.* at 225 n. 5).

5. Finally, Mr. Brugess is an employee-associate of this law firm, not a partner. Accordingly, he will not share in any fee generated in the *Miller* case.

/s/ James L. Farina
James L. Farina

Signed and sworn to before me this 10th day of September, 1996.

/s/ Michele Rosario
Notary Public

## PLAINTIFF'S EXHIBIT B

## MEMORANDUM

TO: All Attorneys and Staff

FROM: J. Dillon Hoey and James L. Farina

RE: George Brugess, New Attorney

DATE: July 31, 1996

We are pleased to announce that as of August 5, 1996, attorney George Brugess will become an employee of our firm.

As most of you should know, George was formerly in-house counsel at the Chicago & North Western Transportation Co. and was rather reluctantly swept into the Union Pacific when it purchased that railroad.

The purpose of this memo is to stress how important it is that we avoid even the slightest appearance of impropriety. No one is to discuss any aspect of any pending claim against the former CNW or the UP files in George's presence. Furthermore, George is not to have access to any of our files that relate to any such pending claim. Finally, in the future, George will only be assigned those cases against the UP where the injury occurred *after* September 1, 1996.

We understand that some of the above restrictions will inhibit the free flow of information that normally occurs in our office. Nonetheless, the benefits of having George Brugess working here outweigh the temporary inconvenience it will cause.

JLF:mar

## *AFFIDAVIT OF GEORGE T. BRUGESS*

I, George T. Brugess, being duly sworn and on oath, do hereby depose and state as follows:

1. I am an associate in the law firm of HOEY & FARINA.

2. I previously was employed by Chicago & NorthWestern Transportation Co./Union Pacific Railroad Co. ("CNW/UP").

3. I have been effectively screened from any participation in the instant case.

4. The very first order of business on my first day at the law firm was that I was firmly instructed not to access any pending CNW/UP files and that such files would be isolated in a separate cabinet and kept under lock and key to prevent even inadvertent contact.

5. I was firmly instructed not to have any contact with Mr. Miller, the Plaintiff, or any agent, officer, or employee of Mr. Miller and not to have any contact with any witness for or against Mr. Miller regarding this case.

6. I was firmly instructed not to discuss this matter with any member, associate, employee, or agent of the law firm.

7. I have obeyed the instructions given to me; I have not seen any part of any CNW/UP file; I have not had any contact with anyone including the Plaintiff, his agents, officers, employees, family, medical providers, or other person; I have not had contact with any witness regarding the case; and I have not discussed this matter with anyone associated with the law firm.

8. I will not have any participation in this case or any other pending CNW/UP case in the future.

9. I am familiar with the Illinois Rules of Professional Conduct and specifically Rules 1.6 through 1.10.

10. Under no circumstances would I breach my professional obligation to maintain the confidences of my former railroad clients as required by the Illinois Rules of Professional Conduct.

11. As an associate and employee of the law firm, I will not share in any fee generated by this case.

/s/ George T. Brugess
George T. Brugess

Signed and sworn to before me this 10th day of September, 1996.

/s/ Michele Rosario
Notary Public